UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL KING, <br><br> Plaintiff, <br><br> v. <br><br> VENETIAN CORP., <br><br> Defendant, | Civil Action No.: 06-2610 (JLL) <br><br> **OPINION** |
| VENETIAN CORP., <br><br> Third-Party Plaintiff <br><br> v. <br><br> SICO INC., DANIELLE MACIVER COLLURA, & JOSEPH COLLURA <br><br> Third-Party Defendants | |
| VENETIAN CORP., <br><br> Third-Party Plaintiff <br><br> v. <br><br> DOROTHY MACIVER <br><br> Third-Party Defendant | |

**LINARES, District Judge.**

There are three separate motions for summary judgment currently before the Court in this matter. First, Defendant/Third-Party Plaintiff Venetian Corporation ("Venetian") has moved for

summary judgment as to all claims filed against it by Plaintiff Michael King. Second, Third-Party Defendant Sico, Inc. ("Sico") has moved for summary judgment as to the third-party claims filed against it by Venetian. Finally, Third-Party Defendants Danielle MacIver Collura, Joseph Collura, and Dorothy MacIver (collectively the "individual third-party defendants") have moved for summary judgment as to the third-party claims filed against them by Venetian and as to any cross-claims filed against them by Sico. The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Venetian's motion is denied, and the motions filed by both Sico and the individual third-party defendants are granted.

I. BACKGROUND

The underlying cause of action arises out of a slip and fall incident that occurred at the Venetian on September 10, 2005. (Civ. R. 56.1 Stmt. of Mat'l Facts Not in Dispute, ¶ 1 [hereinafter "Venetian Fact Stmt."].) The Venetian is a reception and catering hall located in New Jersey. (Third-Pty. Defs.' Stmt. of Undisputed Mat'l Facts Pursuant to Local Civ. R. 56.1, ¶¶ 1-2 [hereinafter "Collura Fact Stmt."].) Mr. King alleges that he "fell while dancing on a portable dance floor." (Venetian Fact Stmt. ¶ 1.) Mr. King was a guest at the Venetian for the wedding reception of third-party defendants Danielle MacIver Collura and Joseph Collura (collectively "the Colluras"). (Collura Fact Stmt. ¶ 2.) Third-party defendant Dorothy MacIver is the mother of the bride. (Id. at ¶ 7.) Mr. King is the grandfather of the bride. (Id. at ¶ 15.)

On August 27, 2003, the Colluras decided to hold their wedding reception at the Venetian, and a written agreement for catering services ("the agreement") was signed by Mrs. MacIver. (Id. at ¶¶ 4, 7.) The Colluras did not sign the agreement. (Id. at ¶¶ 8, 10.) The

agreement provided that the wedding reception would be held at the Venetian on September 10, 2005. (Id. at ¶ 12.) The agreement contained an indemnification clause. (Id. at ¶ 13.) It provided:

> CONDITION OF PREMISES, REPAIR AND INDEMNIFICATION. The Lessee undertakes to take good care of all fixtures, furnishings, and other property in the facilities rented, and assumes responsibility for damages that may be caused by the Lessee, the Lessee's guests (invited or uninvited), and agrees to hold the Lessor harmless for any claim that may be asserted against it.

(Id.)

At the Collura's wedding reception, Mr. King slipped and fell while dancing, injuring himself. Mr. King testified that he had one drink and a sip of another while at the reception. (Cert. of Richard J. Zeitler, Jr. [hereinafter "Zeitler Cert."], Ex. A, Dep. of Michael King, Tr. 37:10-12, 42:25-43:4.) When asked how he fell, he stated that he was dancing on the dance floor when he "hit into something" and then fell and landed on the rug. (Id. at 49:24-50:1-4.) Mr. King also testified that he did not observe anything wet or slippery in the area where he fell. (Id. at 52:2-8.)

Mr. King's wife, Agnes King, testified that she was less than five feet away from where Mr. King was dancing at the time of the incident. (Id. at Ex. B, Dep. of Agnes King, Tr. 51:17-52:2.) She testified that he was dancing toward the end of the dance floor, and that he fell onto carpet. (Id. at 51:17-20, 66:9-11.) She further stated that the perimeter of the dance floor had a small metal lip on the edge. (Id. at 56:5-16.) She stated that she noticed the dance floor was raised a little because when she came into the reception area, she "tripped a little." (Id.)

Mr. King's daughter, with whom he was dancing immediately preceding his fall, testified that he fell "right on the edge of the dance floor, because his back landed on the carpeting and

his legs were on the floor." (Id. at Ex. C, Dep. of Colleen Rinaldi, Tr. 61:14-25.) She also testified that the perimeter of the dance floor was raised, that "there was a lip," and that it was angled. (Id. at 74:19-75:7.) Other deposition testimony also indicated that Mr. King was dancing near the edge of the dance floor at the time of the incident. (Id. at Ex. D, Dep. of Kathleen Collura, Tr. 21:22-22:6.) Kathleen Collura further testified: "When I walked into the hall . . . my mother had almost tripped . . . so we shuffled to our left[;] I noticed at the time [the dance floor] was wood with a lip." (Id. at 23:19-23.) She testified that the lip was "about five or six inches . . . approximately" and "went all the around the dance floor." (Id. at 25:13-22, 26:3-9.) She stated that there was a seam, and that "you could see that it was joined together." (Id.)

In 2001, the Venetian purchased the portable cam-lock dance floor used during the reception from Sico. (Sico, Inc.'s Local Civ. R. 56.1 Stmt. of Mat'l Facts, ¶ 2 [hereinafter "Sico Fact Stmt."] (located within Sico's moving brief)). Sico manufactured the dance floor. (Venetian Fact Stmt. ¶ 13.) The dance floor is made up of "square wood panels that feature interlocking devices." (Sico Fact Stmt. ¶ 3.) The panels are connected to each other to assemble the dance floor. (Id.) According to Sico, "[t]he panel's tongues, grooves and positioning pins, in conjunction with the rotating cam locks, function to horizontally and vertically align the panels and lock them together into a uniform dance floor surface." (Id.) "The dance floor also has an aluminum edge trim around it that connects the outer square panels and has the same rotating cam locks." (Id. at ¶ 4.) If assembled correctly, the edge trim is supposed to align flush with the surface of the dance floor. (Id.)

At the time of sale, Sico provided the Venetian with an information sheet concerning the dance floor assembly. (Id. at ¶ 5.) The "sheet cautions users *not* to use the floor panels '[u]nless

the panels are locked tightly together,' '[i]f 1/8 [of an inch] or more gap shows between the panels and/or edge trim,' and/or '[i]f [the] surface is uneven or has missing sections.'" (Id. (emphasis and alteration in original).)  The sheet further states that the user "assumes full responsibility for the installation and use of all dance floor components" and warns that "failure to follow [the] instructions could cause a fall and serious injury." (Id. at ¶¶ 5-6.)

On the date of the reception, the dance floor was assembled by the Venetian's busboy or setup staff.  (Zeitler Cert., Ex. F., Dep. of Dave Mocera, Tr. 48:3-10.)  Prior to the incident, the Colluras did not complain to the Venetian about the condition of the dance floor.  (Def. Venetian Corp.'s Br. in Supp. of Mot. for Summ. J. to Dismiss the Compl. [hereinafter "Venetian Br."], Ex. 12, Dep. of Danielle Collura, Tr. 15:11-16; id. at Ex. 13, Dep. of Joseph Collura, Tr. 8:23-9:4.)  Dave Mocera, the Venetian's general manager, testified that after the accident he inspected the dance floor and did not notice any separation between the floor portions or between the floor and the edge trim.  (Cert. of Michael R. Sarno, Esq. in Supp. of Sico, Inc.'s Mot. for Summ. J., Ex. E, Dep. of Dave Mocera, Tr. 23:21-24:22.)

In his complaint, Mr. King pleads one cause of action against Venetian based in premises liability.  (Compl. ¶ 11.)  Mr. King has asserted no claims against Sico.  In response to Mr. King's complaint, Venetian filed two third-party complaints.  The first complaint alleges causes of action for contribution and common law indemnification against Sico, as well as a contractual indemnification claim against the Colluras.  (First Venetian Compl. ¶¶ 12, 14, 19.)  Venetian's second third-party complaint alleges one count of contractual indemnification against Mrs. MacIver.  (Second Venetian Compl. ¶ 9.)  Finally, Sico's Answer to Ventian's third-party complaint alleges cross-claims against the individual third-party defendants for both contribution

and indemnification. (Sico Ans., at 14.) Venetian presently moves for summary judgment as to Mr. King's claims, Sico moves for summary judgment as to the Venetian's claims against it, and the individual third-party defendants move for summary judgment as to Venetian and Sico's claims against them.

## II.   LEGAL STANDARD

A court shall grant summary judgment under Rule 59(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party first must show that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324.  The non-moving party must offer specific facts that establish a genuine issue of material fact and may not simply rely on unsupported assertions, bare allegations, or speculation. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  Also, the Court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

## III.   VENETIAN'S SUMMARY JUDGMENT MOTION

In his complaint, Mr. King pleads one cause of action against Venetian based in premises liability. (See Compl. ¶11.)  Venetian argues that there is no evidence in the record to support Mr. King's negligence claim.  Mr. King responds that the evidence presented proves that the

sloping, inclined metal edge, used and inappropriately maintained by the Venetian, is the cause of his injuries.

To prove a prima facie case of negligence under New Jersey law, "a plaintiff must establish that [the] defendant breached a duty of reasonable care, which constituted a proximate cause of plaintiff's injuries." Keith v. Truck Stops Corp. of Am., 909 F.2d 743, 745 (3d Cir. 1990) (citing Brown v. Racquet Club of Bricktown, 471 A.2d 25, 29 (N.J. 1984)).  The proprietor of premises to which the public is invited to do business is under a duty to use reasonable care to maintain the premises in a condition reasonably safe for the business invitee's use. Id.; see also Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 316 (N.J. 2003).  This duty of care to business invitees "requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Id.  Ordinarily, in order to prove a prima facie violation of that duty, a plaintiff must show that the condition was unsafe and "that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." Id.  However, where, as here, the issue concerns a dangerous condition allegedly created by the proprietor, notice is not required. O'Shea v. K Mart Corp., 701 A.2d 475, 477 (N.J. Super. Ct. App. Div. 1997).

Venetian argues that there is no evidence that the dance floor was defective or dangerous or that Mr. King fell as a result of any defective or dangerous condition.  It further asserts that Mr. King "did not fall at the edge or transition area between the floor and the carpet." (Venetian Fact Stmt. ¶ 2.)  It argues that Mr. King's claim amounts to nothing more than a dance mis-step

or loss of balance.  This Court disagrees that there is no evidence to support Mr. King's claim against Venetian.

First, Mr. King testified that he was dancing at the edge of the dance floor.  Other testimony supports this statement.  Mr. King also testified that just before his fall his foot hit against something.  Various people testified that the edge of the dance floor had a lip.  And, Mrs. MacIver and her daughter testified that she tripped on the dance floor as she came into the reception hall.

Second, and most importantly for this motion, Mr. King's engineering expert, George Gianforcaro, opines that Venetian's negligence caused Mr. King's fall.  Mr. Gianforcaro inspected the portable dance floor in February 2007.  (See Zeitler Cert., Ex. G, Cert. of George F. Gianforcaro, P.E.)    For his inspection, he laid out the dance floor to duplicate the conditions at the time of the incident.  Mr. Gianforcaro specifically focused upon the aluminum sloping edge sections along the outside of the flooring.  He found that these outer sections, when installed, created a 12-degree (20 percent) horizontal angle between the carpet and the edge of the dance floor.  He further reported:

> The aluminum strips, in some locations, are 1/8 of an inch higher than the adjacent floor sections.  The aluminum sloping edge strips are misaligned with the adjacent sloping edge strips and are not on an even and uniform plane with the adjacent sections, in that the sections vary in height from 1/8 of an inch to 3/8 of an inch between sections.

(Id. at ¶ 13.)  He opined that the defective and hazardous conditions were likely due to " many years of misuse and negligent maintenance by [t]he Venetian and from negligently and improperly installing and dismantling the portable dance floor by [t]he Venetian."  (Id. at ¶ 20.) He stated that, in his opinion, "this dangerous hazardous condition [existed] at least 12 months

prior to September 10, 2005." (Id. at ¶ 21.) In his report, Mr. Gianforcaro also references the warning language provided by Sico in its information sheet. That language states that the floor was not to be used "if 1/8 [inch] or more gap shows between the panels and/or edge trim" and "if surface is uneven or has missing sections." (Id. at ¶ 23.) The instructions also provide that "failure to follow instructions could cause a fall and serious injury." (Id.) Based on the inspection, analysis of the relevant deposition testimony and exhibits, and these instructions, Mr. Gianforcaro determined that Mr. King's fall "was due to the improper installation and improper maintenance of the portable dance floor sections not being on an even and uniform plane with the adjacent floor sections" which "posed both slipping and tripping hazards." (Id. at ¶ 22.)

Examining these facts in a light most favorable to the non-moving party, Mr. King, this Court finds that the evidence submitted by Mr. King establishes that a genuine issue of material fact exists as to whether the Venetian was negligent in assembling or maintaining the dance floor and whether the condition of the dance floor was the proximate cause of Mr. King's injuries. Therefore, Venetian's summary judgment motion is denied.

## IV.  SICO'S SUMMARY JUDGMENT MOTION

Venetian's first third-party complaint alleges causes of action for common law indemnification and contribution against Sico. Sico moves for summary judgment seeking dismissal of both claims.

### A.  Common-Law Indemnification Claim

Under New Jersey law there must be a sufficient legal relationship between the parties to support a common law duty to indemnify. See Estate of Spencer v. Gavin, 946 A.2d 1051, 1072 (N.J. Super. Ct. App. Div. 2008); see also Poltrock v. N.J. Auto. Accounts Mgmt. Co., No. 08-

1999, 2008 U.S. Dist. LEXIS 103351, at *28 (D.N.J. Dec. 22, 2008) (stating that under New Jersey law "common law indemnification . . . arises where a party seeking indemnification can set forth a sufficient legal relationship between itself and the third party defendant."). Examples of such sufficient relationships include principal-agent, master-servant, and partnerships. See Estate of Spencer, 946 A.2d at 1072; see also Restatement of Restitution, § 96 cmt. a (stating that there are certain "well-defined situations" to which common law indemnity applies, including master-servant and principal-agent).

In this case, there is an insufficient legal relationship between Sico and Venetian to support a common law indemnification claim. No evidence demonstrates that the relationship between these parties is more than merely that of buyer and seller. Therefore, Sico's motion for summary judgment as to the indemnification claim is granted.

    **B.**    **Contribution Claim**

Venetian's third-party complaint against Sico also includes a contribution claim based on negligence. (First Venetian Compl. ¶ 12.) Venetian argues that if it is found liable to Mr. King at trial, then it "would be entitled to contribution from Sico for designing and manufacturing a floor which was not safe, had an improper edge or was designed or manufactured improperly." (Def. Venetian Corp.'s Br. in Opp'n to Sico Incorp.'s Mot. for Summ. J., at 3 [hereinafter "First Venetian Opp'n"].) Venetian's negligence contribution claim against Sico thus appears premised on design and manufacturing defect theories–that is, a product liability claim.

In New Jersey, any action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, is governed by the Product Liability Act ("PLA"), N.J.S.A. §§ 2A:58C-1 to 2A:58C-8. Thus, to the extent that the Venetian's third-party

claim against Sico is based in negligence, it is barred by the PLA.  See N.J. Stat. Ann. § 2A:58C-1(b)(3).

Additionally, while not pled within Venetian's Complaint, this Court notes that any claim based on product liability law asserting design and manufacturing defects also fails on the evidence submitted here.  In New Jersey, "[a] product is deemed to be defective if it is not reasonably fit, suitable, or safe for the ordinary or foreseeable purpose for which it is sold." Myrlak v. Port Auth., 723 A.2d 45, 52 (N.J. 1999).  To show that there is a manufacturing defect, a plaintiff must show that "the product [came] off the production line in a substandard condition based on the manufacturer's own standards or identical units that were made in accordance with the manufacturing specifications."  Id. (citing N.J. Stat. Ann. § 2A:58C-2a). The plaintiff bears the burden of proof.  Lewis v. Am. Cyanamid Co., 715 A.2d 967, 980 (N.J. 1998).  Generally, "[t]o prove both the existence of a defect and that the defect existed while the product was in the control of the manufacturer, a plaintiff may resort to direct evidence, such as the testimony of an expert who has examined the product, or, in the absence of such evidence, to circumstantial proof."  Myrlak, 723 A.2d at 52.  But, "where the allegedly defective product involves a complex instrumentality, a plaintiff is required to provide expert testimony."  Lauder v. Teaneck Volunteer Ambulance Corps, 845 A.2d 1271, 1277 (N.J. Super. Ct. App. Div. 2004).

In this case, Venetian argues that should it be found negligent, "then [it] is entitled to . . . contribution from Sico, who manufactured and designed the dance floor." (First Venetian Opp'n, at 13.)  The Venetian fails to acknowledge that it could be solely liable for assembling or maintaining an originally defect-free dance floor.  For Sico to also be liable, there must be some basis that supports the Venetian's assertion that the portable floor was defectively manufactured

or designed by Sico. The Venetian relies upon Mr. Gianfarcaro's report. However, the Gianfarcaro report attributes Mr. King's injuries solely to the actions of the Venetian. It does not attribute liability to Sico. Additionally, the Venetian's own expert, Dennis Andrews "concluded that the . . . dance floor was not defective in any way." (Sico Fact Stmt. ¶ 23 (undisputed by Venetian).) Indeed, there is no expert proof submitted to this Court attributing liability to Sico for Mr. King's injuries. Without such proof, the Venetian's conclusory product liability argument fails as a matter of law. Therefore, Sico's motion for summary judgment is granted.

## V.     THE INDIVIDUAL DEFENDANTS' SUMMARY JUDGMENT MOTION

Finally, Venetian's first third-party complaint alleges a contractual indemnification claim against the Colluras, and its second third-party complaint alleges one count of contractual indemnification against Mrs. MacIver. Sico's Answer also alleges cross-claims against the individual third-party defendants for both contribution and indemnification. The Colluras and Mrs. MacIver presently move for summary judgment as to all third-party claims and cross-claims alleged against them.

### A.     Venetian's Third-Party Contractual Indemnification Claims

Venetian alleges one count of contractual indemnification against each of the individual defendants. In moving for summary judgment, the individual third-party defendants make two separate arguments. First, the Colluras argue that they were not parties to the contract and so are not bound by its terms because they did not sign the contract. Second, the individual third-party defendants collectively argue that the indemnification agreement is unenforceable as a matter of

law because Venetian is seeking to be indemnified for its own negligence. The Court finds the second argument dispositive, as discussed below. Therefore, it is unnecessary to determine if the Colluras may be bound by the clause even though they did not sign the agreement.

Under New Jersey law, "[i]ndemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally." Ramos v. Browning Ferris Indus., Inc., 510 A.2d 1152, 1159 (N.J. 1986). If the meaning of an indemnification clause is ambiguous, then it "should be strictly construed against the indemnitee." Id. Applying these principles, "a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." Id. In Azurak v. Corporate Property Investors, the New Jersey Supreme Court wrote that "in order to allay even the slightest doubt on the issue of what is required to bring a negligent indemnitee within an indemnification agreement, we reiterate that the agreement must specifically reference the negligence or fault of the indemnitee." 814 A.2d 600, 601 (N.J. 2003). The Venetian acknowledges that this is the applicable legal standard, but argues that it "is not seeking indemnification for its own negligence since it was not negligent in causing this accident." (Def. Venetian Corp.'s Br. in Opp'n to Danielle MacIver Collura, Joseph Collura and Dorothy MacIver's Mot. for Summ. J., at 5.) The Court disagrees.

Mr. King's claim against the Venetian is based upon premises liability–negligence, and the Venetian's third-party claims seek indemnification for the losses arising out of that liability. In other words, Venetian is seeking to be indemnified if it is found to have been negligent. Therefore, the question here is whether the indemnification clause in the contract explicitly covers negligence claims. The indemnification provision states:

> CONDITION OF PREMISES, REPAIR AND INDEMNIFICATION.
>
> The Lessee undertakes to take good care of all fixtures, furnishings, and other property in the facilities rented, and assumes responsibility for damages that may be caused by the Lessee, the Lessee's guests (invited or uninvited), and agrees to hold the Lessor harmless for *any claim that may be asserted* against it.

(Collura Fact Stmt. at ¶13 (emphasis added).) The Court finds that the emphasized language fails to expressly indemnify the Venetian for its own negligence; it does not "specifically reference the negligence or fault of the indemnitee." Azurak, 814 A.2d at 601. Therefore, the provision is unenforceable by Venetian in the event it is found to be liable for Mr. King's injuries because of its own negligence, the only claim brought against it in this matter. The summary judgment motion of the individual third-party defendants for claims brought against it by Venetian is granted.

### B. Sico's Cross-Claims Against the Individual Defendants

Sico's Answer alleges cross-claims against the Colluras and Mrs. MacIver for both contribution and indemnification. The individual defendants also move for summary judgment as to these claims.

First, as discussed above, to assert a common law indemnification claim, there must be a sufficient legal relationship between the parties. See Estate of Spencer, 946 A.2d at 1072; Poltrock, 2008 U.S. Dist. LEXIS 103351, at *28. Here, Sico has failed to establish a sufficient legal relationship between itself and the individual third-party defendants. Thus, Sico's cross-claims for common law indemnification are dismissed.

Second, all cross-claims for contribution filed by Sico against the individual third-party defendants are moot because this Court has granted Sico's motion for summary judgment as to

Venetian's third-party claims.  As such, the individual third-party defendant's motion for summary judgment as to Sico's cross-claims is also granted.

## VI.    CONCLUSION

For the above reasons, Venetian's summary judgment motion is denied, and the summary judgment motions filed by both Sico and the individual third-party defendants are granted.  An appropriate Order accompanies this Opinion.

DATED: October 19, 2009                                     /s/ Jose L. Linares
                                                                                United States District Judge